GOLD BONDHOLDERS PROTECTIVE COUNCIL, Richard L. Randolph, David Brenner, Karl L. Flaccus, and Lee R. Ellenberg, Appellants,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellee.

No. 5904.

Supreme Court of Alaska.

Sept. 3, 1982.

---

Stephen S. DeLisio, Patricia L. Zobel, Merdes, Schaible, Staley & Delisio, Inc., Anchorage, for appellants.

Bruce E. Gagnon, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellee.

Before BURKE, C. J., RABINOWITZ, CONNOR and COMPTON, JJ., and SCHULZ, Superior Court Judge.*

## OPINION

CONNOR, Justice.

This case concerns the enforceability of certain "gold clauses" in bonds issued in the nineteenth century by a private corporation.

Appellants are persons who in 1980 purchased certain bonds of the Atchison, Topeka and Santa Fe Railway Company (Santa Fe). The bonds were issued in 1895. The "gold clause" in the bonds promised to pay in 1995 the face amount of the bonds to the bondholders in "gold coin of the United States, of the present standard of weight

---

* Schulz, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

and fineness, or its equivalent," together with interest thereon at 4% per annum, "payable in like gold coin," semi-annually in each year until the principal sum became due. Additionally, interest coupons of the bonds provided for payment "in gold coin of the United States, or its equivalent."

After purchasing the bonds, appellants demanded that interest owing on the bonds be paid in gold coin or its equivalent, as contrasted with United States currency. Santa Fe refused to honor this demand. Appellants then commenced an action for breach of contract. The superior court dismissed appellants' amended complaint for failure to state a claim on which relief could be granted, and from the judgment of dismissal this appeal was taken.

## I.

A Joint Resolution of Congress of June 5, 1933, now codified as 31 U.S.C. § 463, provides:

"(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in this section, the term 'obligation' means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term 'coin or currency' means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations."

This provision was one of a number of measures taken by the federal government during the Great Depression to reform the monetary and banking systems of the United States, in the hope that the economic recovery of the nation would be facilitated. The net result of 31 U.S.C. § 463, and the other contemporaneous enactments of Congress, was that the United States abandoned gold as a form of legal tender and currency and private ownership of gold as specie was prohibited.

In 1933 it was estimated that over $100 billion in debt obligations were outstanding which contained clauses requiring payment in gold coin, or its equivalent. 77 Cong.Rec. 4531, 4536 (1933). Congress found it necessary to relieve debtors from paying their debts in gold as part of its overall reform of the monetary system. Thus it enacted 31 U.S.C. § 463.

The constitutionality of that provision was upheld in *Norman v. Baltimore & Ohio R. R. Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935). *See also Holyoke Water Power Co. v. American Writing Paper Co.*, 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1937). In *Norman*, the court held that Congress could, in exercising its power over the monetary system of the nation, alter the obligations of gold clauses in private contracts, and that private contracts calling for payment in gold could not be used to frustrate the dominant constitutional power of Congress. 294 U.S. at 307–11, 316, 55 S.Ct. at 415–17, 419, 79 L.Ed. 'at 902–04, 906. In short, it was within the power of Congress to render the gold clauses totally unenforceable.

The *Norman* holding has never been altered by any subsequent decisions of the United States Supreme Court, and the gold clause prohibition of 31 U.S.C. § 463 was never expressly amended until 1977. On its face the state of the law concerning the

enforceability of gold clauses is conclusive. Nevertheless, appellants argue that certain recent events alter the applicability of the federal statute and the holding in *Norman*.

First, appellants argue that Congress had no authority to nullify the gold clauses, and that the *Norman* case was wrongly decided. Under the Supremacy Clause of the United States Constitution,[1] however, we are not at liberty to accept that argument. Second, appellants argue that the federal statute violates the due process clause and the constitutional prohibition against taking property without just compensation. Once again, under the *Norman* case, we are not permitted to strike down the statute under either of these concepts.

Third, appellants argue that 31 U.S.C. § 463 was enacted in response to a critical economic emergency, *i.e.*, the Great Depression, that the emergency has passed, and that we must reconsider the validity of the statute in light of conditions which now exist. In support of this argument appellants cite the statutes enacted in 1973 and 1974 which permit the private ownership of gold,[2] and the statute enacted in 1977, which states that the prohibitions of 31 U.S.C. § 463 shall not apply to gold clauses in obligations issued on or after the date of its enactment (October 28, 1977).[3] Although appellants urge that these enactments amount to an implied repeal of 31

U.S.C. § 463, that is a most difficult conclusion to reach. Congress was modifying the 1933 statute directly, and in the case of the 1977 statute it was careful to make its terms operative only after October 28, 1977.[4]

Lastly, appellants argue that the bonds were not "issued" to them until they were delivered to them in 1980; thus the prospective provisions of the 1977 act apply to them, and the 1933 act does not apply. Appellants rely upon a quotation from Black's Law Dictionary 964 (rev. 4th ed. 1968) to the effect that "date of issue" can refer to either the date when the obligation by its terms begins to run or the date of delivery to the purchaser, and that as to the purchaser the bonds are "issued" when delivered to him. However, the distinction drawn in the Black's Law Dictionary definition has to do with when the interest on the bond begins to accrue. We know of no authority which would consider each purchase of the bond after its first purchase to be a new "issue" of the bond. It is true, as appellants point out, that the Santa Fe bonds are transferrable and that by the express terms of the bond any purchaser can surrender the bond and that "a new registered bond will be issued to the transferee in exchange therefor, as provided in said mortgage or deed of trust." But that language was drafted in 1895, and it was the purpose of Congress in enacting 31

---

**1.** Article VI of the United States Constitution provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby; anything in the Constitution or laws of any state to the contrary notwithstanding."

**2.** Act of Sept. 21, 1973, Pub.L.No.93–110, 87 Stat. 352 (codified at 31 U.S.C. §§ 449, 449c, 442 notes, 1141–43) and Act of Aug. 14, 1974, Pub.L.No.93–373, 88 Stat. 445 (codified at 22 U.S.C. § 284*l* and 31 U.S.C. § 442).

**3.** Act of Oct. 28, 1977, Pub.L.No.95–147, § 4(c), 91 Stat. 1227, 1229 (codified at 31 U.S.C. § 463 note).

**4.** It is noteworthy that other courts examining the question have concluded that the recent congressional acts permitting private ownership of gold did not in any manner affect the prohibition against enforcement of gold clauses contained in 31 U.S.C. § 463. *See Southern Capital Corp. v. Southern Pacific Co.*, 568 F.2d 590 (8th Cir. 1978), *cert. denied*, 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978); *Feldman v. Great Northern Rwy. Co.*, 428 F.Supp. 979 (S.D.N.Y.1977); *Equitable Life Assurance Society of U. S. v. Grosvenor*, 426 F.Supp. 67 (W.D. Tenn.1976), *aff'd*, 582 F.2d 1279 (6th Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Henderson v. Mann Theatres Corp. of California*, 65 Cal.App.3d 397, 135 Cal.Rptr. 266 (1976), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977).

U.S.C. § 463 to vitiate such obligations insofar as they required payment in gold specie. We are unpersuaded by appellants' argument that the bonds were first issued as to them in 1980 and that, therefore, they come within the provisions of the 1977 act.

 In summary, the unenforceability of the gold clauses is made abundantly clear by the 1933 Act of Congress and the *Norman* case. Appellants' arguments to the contrary are totally unpersuasive. Thus, on this question we must affirm.

## II.

This case was brought as a class action. The parties argue at some length about whether the superior court properly ruled on the motion to dismiss the complaint before ruling on the question of class certification under Alaska Rule of Civil Procedure 23(c)(1). That rule requires that the court must determine whether a class action may be maintained, "as soon as practicable after the commencement of an action."

For reasons of judicial economy, a court must be allowed some latitude in deciding what issues may be determined before the class action question is confronted. As stated in 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1798, at 249, 250 (1972):

"A party opposing the class action may use any of the pleading and motion provisins made available by the rules to challenge its continuance. Thus, defendant may move to dismiss a class action complaint for failure to state a claim or for appropriate corrective action on the basis of any of the other defenses listed in Rule 12.

. . . . .

In order to obtain a dismissal of the complaint under Rule 12(b)(6) for failure to state a claim, it must appear that plaintiff will be unable to prove facts in support of his allegations entitling him to relief." (footnotes omitted).

Here the defendant was willing to forego the benefits of res judicata which would have applied against the class upon certification and notice. Apparently it felt that such a benefit was not worth the extreme expense and effort of going through class certification and notice procedures.

It is our view that in a case of this type the superior court has discretion to rule upon a motion to dismiss in advance of determining the class action question. Even though a suit may be a proper class action, it is still subject to dismissal for failure to state a cause of action. None of the cases cited by appellants have persuaded us to the contrary.

AFFIRMED.

MATTHEWS, J., not participating.