**CITY OF FAIRBANKS, a municipal corporation of the State of Alaska, Plaintiff,**

**v.**

**AMOCO CHEMICAL COMPANY, a corporation a/k/a Amoco Chemicals Company, a successor of and formerly known as Amoco Chemicals Corporation, and Amoco Reinforced Plastics Company, a corporation, Defendants.**

**No. S–7682.**

Supreme Court of Alaska.

Jan. 30, 1998.

---

Joseph W. Evans, Birch, Horton, Bittner & Cherot, Anchorage, for Plaintiff.

Marcus Clapp, Clapp, Peterson & Stowers, Fairbanks, for Amoco Chemical Company.

Gary Foster, Law Offices of Gary Foster, Fairbanks, and Christopher E. Zimmerman, Call, Barrett & Burbank, Fairbanks, for Amoco Reinforced Plastics Company.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The City of Fairbanks brought suit following collapse of sewer pipe manufactured by Amoco Reinforced Plastics Company. The United States District Court for the District of Alaska has certified the following questions of state law concerning the timeliness of the lawsuit:

1. Where a municipal corporation purchases defective goods and learns that it relied on inaccurate information furnished by the vendor, do claims for negligent and intentional misrepresentation simultaneously accrue or is accrual of the claim for intentional misrepresentation delayed until the municipal corporation has notice of the vendor's scienter? Further, if notice of scienter is required, must the notice be actual or will inquiry notice suffice to start the statute of limitations running?

2. Where a municipal corporation asserts a claim under the Alaska Unfair Trade Practices Act (AS 45.50.471, et. seq.), is the claim governed by the two-year statute of limitations set forth in the Act (AS 45.50.531(f)) or by the six-year statute of limitations governing claims by municipal corporations (AS 09.10.120)?

We conclude that a municipality's intentional misrepresentation claim does not ac-

crue until it has actual notice of all elements of the cause of action, including scienter, and that the statute of limitations for public entities, AS 09.10.120, governs a municipality's Unfair Trade Practices Act claim.

### II. FACTS AND PROCEEDINGS

From 1973 to 1980, Amoco Reinforced Plastics Company (ARPCO) manufactured reinforced plastic pipe known as Techite. ARPCO was a subsidiary of Amoco Chemicals Company and we refer to the two companies collectively as Amoco.[1] In marketing Techite, Amoco claimed that the pipe could "withstand severe loading conditions, extreme temperature variations, and aggressive chemical attack," and "can be installed with assurance that corrosion resistance will not be a concern."

In 1974 the City invited bidding for a large-diameter sewer pipe project. The City chose Techite pipe for the project and installed it in 1975. In late 1978, within four years of its installation, the Techite pipe, serving approximately 5,000 people and carrying 1,000,000 gallons of untreated sewage per day, began collapsing.

Following unsuccessful repairs, the City "sliplined" smaller diameter iron pipe into the Techite line, substantially reducing its carrying capacity. The City estimated that the failure of the Techite pipe cost the City $39 million.

In a July 25, 1979, letter to the City, Amoco attributed the structural failure of the pipe to "improper bedding at the time of initial installation" or "changes in the native soil conditions." As of 1980, the City believed that the cause of the collapses was due to one or more of the following: a pipe defect, improper construction techniques, or unanticipated soil conditions. It reached no conclusions at that time about the cause of the collapses or about litigation against potentially liable parties.

---

1. Amoco Chemicals Company is also known as Amoco Chemical Company. The United States District Court held that Amoco Chemical Company was the alter-ego of ARPCO. The United States Court of Appeals for the Ninth Circuit reversed this ruling. See City of Fairbanks v. Amoco Chemical Co., Nos. 92–36924, 92–36949, 1995 WL 15591, at *14–19 (9th Cir. Jan. 13, 1995). Because this decision does not affect the certified questions, we refer to the corporations collectively as Amoco.

In 1986 the City first gained access to confidential internal Amoco documents detailing Techite's vulnerability to strain corrosion.[2]

In September 1987 the City sued the Techite manufacturers in state court.[3] The case was removed to federal court. The City's second amended complaint alleged two relevant causes of action against Amoco: fraud (intentional misrepresentation) and a claim under the Alaska Unfair Trade Practices Act, AS 45.50.471 et seq.

The court held that statutes of limitation barred all of the City's claims other than its common law fraud claim. In October 1992 the court granted judgment as a matter of law against the City on the fraud claim, because ARPCO had no duty to disclose material facts relevant to the transaction. The City appealed. The United States Court of Appeals for the Ninth Circuit reversed in part and remanded for a new trial on the fraud claim. It also reversed the dismissal of the City's statutory unfair trade practices claim.

On remand, Amoco again moved for summary judgment on limitations grounds on the fraud claim. Amoco argued that the applicable limitations period began to run when the City had knowledge of circumstances sufficient to put a reasonable person on notice. The City cross-moved for summary judgment on the limitations issue.

The federal district court, concluding that there was no controlling Alaska precedent on the issues presented, asked us to answer the certified questions listed above. We agreed to do so. See Alaska R.App. P. 407.

### III. DISCUSSION

#### A. Standard of Review

 The certified questions present questions of law. "Our consideration is thus de novo." D.D. v. Insurance Co. of N.A., 905 P.2d 1365, 1367 n. 3 (Alaska 1995) (considering a certified question). We adopt the rule of law that is most persuasive in light of precedent, reason, and policy. Id. (citing Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)); Cummings v. Sea Lion Corp., 924 P.2d 1011, 1022 n. 18 (Alaska 1996).

#### B. Must a Municipality Have Actual Knowledge of a Defendant's Scienter before a Fraud Cause of Action Accrues?

 The first question is whether the applicable statute of limitations, AS 09.10.120, began to run on the City's common law fraud claim before the City had actual knowledge of Amoco's scienter.[4]

The City claims the limitations period did not begin to run until it actually discovered Amoco's fraud in 1986, a year before it filed suit; Amoco asserts that the limitations period began to run when the City learned, more than six years before it sued, that the pipe

---

**2.** Strain corrosion occurs when acidic effluent attacks the pipe's resin-glass matrix, leaching calcium from the glass filaments. This permits stress cracking of the filaments and failure of the pipe wall. Strain corrosion is more likely in plastic pipe like Techite when it is installed in wet, unstable soil which may bend and deflect the pipe, creating a strain. The soil in the Fairbanks area is wet and sandy and can be unstable; the sewage that the collapsed pipe carried is "locally [renowned] for its peculiar corrosiveness."

Failures of Techite in Alaska, California, Hawaii, and North Dakota were alleged in at least five other lawsuits. See Amoco Chemical Co. v. Certain Underwriters at Lloyd's of London, No. B083904, 1996 WL 407855, at *3 (Cal.App. June 4, 1996) (reversing judgment in favor of Amoco, which had sued its insurer for indemnification of $45 million in legal fees and costs incurred in defending suits alleging Techite failures).

**3.** The City later settled with all parties except ARPCO and Amoco Chemical Co.

**4.** "The elements for a cause of action for knowing misrepresentation or deceit include: a false representation of fact, scienter, intention to induce reliance, justifiable reliance, and damages." Barber v. National Bank of Alaska, 815 P.2d 857, 862 (Alaska 1991) (citing Restatement (Second) of Torts § 525 (1977)).

The scienter element requires that the defendant know the falsity of the representation. The tort of fraudulent misrepresentation "requires proof that the maker knew of the untrue character of his or her representation." Bubbel v. Wien Air Alaska, Inc., 682 P.2d 374, 381 (Alaska 1984) (citing Restatement (Second) of Torts § 530 cmt. b (1977)).

was defective and that Amoco had materially misrepresented its qualities.

Alaska Statute 09.10.120, the statute of limitations for public entities, provides:

> An action brought in the name of or for the benefit of the state, any political subdivision, or public corporation may be commenced only within six years of the date of accrual of the cause of action. However, *if the action is for relief on the ground of fraud, the limitation commences from the time of discovery by the aggrieved party of the facts constituting the fraud.*

AS 09.10.120 (emphasis added). The emphasized language is a statutory "discovery rule." We have not previously interpreted this part of section .120.

We interpreted similar, but not identical, language in another limitations statute, AS 09.10.230. *See Carter v. Hoblit,* 755 P.2d 1084, 1087 (Alaska 1988).[5] We held that alleged fraud victims were not required to act reasonably in order to be entitled to the benefit of the statutory discovery rule contained in AS 09.10.230. *Id.* at 1087. In doing so, we distinguished the common law discovery rule for fraud[6] from the statutory discovery rule of AS 09.10.230, which we described as speaking of "discovery of the fraud as a fact rather than as to when the fraud might have been discovered had the victim acted reasonably."[7] *Id.* We also reasoned that requiring due care of fraud victims, especially in context of real estate

fraud, "tends to reward the defrauder." *Id.* Consequently, we held that plaintiffs' December 1983 fraud action was not time barred. *Id.*

The City argues that *Carter* controls the timeliness of its common law fraud claim. It also argues that knowing that a representation is false is to be distinguished from knowing of the defendant's state of mind. It relies on a federal appellate decision that distinguishes between knowledge of a false representation (an element in both fraud and negligent misrepresentation claims), and knowledge of the defendant's state of mind (an element of a fraud claim not also required for negligent misrepresentation). *Nevada Power Co. v. Monsanto Co.,* 955 F.2d 1304, 1307 (9th Cir.1992) (holding that whether the plaintiff's suit was timely depended upon a determination of when the plaintiff could have, with proper diligence, discovered the facts of fraud).

Amoco argues that, under both statutory and common law discovery rules, the limitations period begins to run when a plaintiff has information sufficient to alert it to begin an inquiry in the exercise of due diligence.[8] It further asserts that *Carter* does not modify the discovery rule doctrine, but only affects the period before the plaintiff learns that a representation is untrue. Amoco reads *Carter* to hold only that a plaintiff need not act reasonably in discovering whether the defendant made misrepresenta-

---

**5.** Hoblit, Carter, and Smalley agreed in 1948 to purchase a parcel of land and to hold title jointly. Hoblit, however, took the deed in his name only. The deed was recorded in June 1973. Hoblit paid all taxes and interim expenses, and declined plaintiffs' offers of reimbursement. He offered to purchase their interests in 1977, implying a state of ownership that concealed the true state of the title. A 1981 title search revealed that only Hoblit held title. *Carter v. Hoblit,* 755 P.2d 1084, 1085, 1087 (Alaska 1988).

**6.** *See Sharrow v. Archer,* 658 P.2d 1331, 1334 (Alaska 1983) (holding statute of limitations for fraud not involving real property is tolled only so long as reliance remains reasonable).

**7.** The discovery rule language in AS 09.10.230 provides: "In an action upon a ... fraud, ... the running of the time within which an action may be commenced starts from ... the discovery of the fraud...."

**8.** Under the common law discovery rule as we most recently summarized it, the limitations period begins to run when "the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights." *Waage v. Cutter Biological Div. of Miles Labs. Inc.,* 926 P.2d 1145, 1148 (Alaska 1996) (citation omitted) (involving claim against product manufacturer). We have occasionally restated and elaborated on the common law discovery rule, but in essence it delays accrual of a cause of action, and therefore the running of the pertinent limitations statute, until the plaintiff is aware of or is deemed to be aware of all elements of the cause of action. *See Cameron v. State,* 822 P.2d 1362, 1366 (Alaska 1991) ("[a] cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action").

tions, but to mandate the running of the fraud limitations statute once plaintiff believes defendant's statements were untrue, even if the plaintiff has no evidence of defendant's scienter. In effect, Amoco would impose a duty of reasonable inquiry to discover defendant's scienter in a fraud case after a municipality learns that a representation was not accurate.

Amoco argues that tolling the limitations statute until a plaintiff has actual notice of scienter would "eviscerate" the statute. It reasons that the statute would rarely apply because, before suing and commencing discovery, plaintiffs rarely have access to direct evidence of defendants' scienter, and that, moreover, AS 09.10.120 would never offer repose to defendants innocent of fraud because there could never be evidence of scienter sufficient to trigger the running of the statute. Amoco concludes that the policy favoring a statute of limitations—preventing stale claims—supports its reading of section .120.

 As we noted above, the applicable limitations statute, AS 09.10.120, contains its own discovery rule, which delays commencement of the limitations period until "the time of discovery by the aggrieved party of the facts constituting the fraud." AS 09.10.120.

 In construing the meaning of a statute, we look to the meaning of the language, the legislative history, and the purpose of the statute in question. *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996). "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987).

The language of the statute, which requires "discovery ... of the facts constituting the fraud," favors the City's interpretation. This language is equivalent to that of AS 09.10.230, which requires "discovery of the fraud" before the limitations period begins to run. The language plainly implies that the statute does not begin to run until the plaintiff acquires knowledge; it plainly does not imply that the plaintiff is deemed to

know "facts" which might be learned upon diligent inquiry. Use of the word "discovery" does not imply an imputation of facts that might be learned.

The legislative history is uninformative. In *Carter,* the concurring opinion argued that the legislative history of AS 09.10.230 required that the statute be construed to require reasonable diligence. *Carter,* 755 P.2d at 1089 (Rabinowitz, J., concurring). The court rejected that analysis in terms equally applicable to AS 09.10.120. *Id.* at 1087 n. 5.

Section .120 was enacted in 1962 without any apparent enlightening legislative history. *See Alascom, Inc. v. North Slope Borough, Bd. of Equalization,* 659 P.2d 1175, 1179 (Alaska 1983) (discussing application of section .120 by analyzing prior statute governing actions by political subdivisions).

It would seem that the legislature's purpose in enacting section .120 was to give public entities a longer limitations period to vindicate public interests. That purpose is more consistent with requiring actual notice of the facts of a fraud than imposing a duty of diligent inquiry.

Amoco's arguments do not justify a different statutory interpretation. The policy of discouraging stale claims must be applied in light of the words of the statute. Also, absent evidence of fraudulent scienter, defendants will not be exposed to public entities' fraud suits, whether brought promptly or not. The fact that a municipality does not pursue a timely negligent misrepresentation claim should not bar a fraud claim if evidence of scienter was not previously available. We note that the 1974 and 1975 Amoco documents the City obtained in 1986 are marked "Proprietary—To be maintained in confidence." That implies they would not have been disclosed voluntarily had the City inquired when it first learned that the pipe might be defective.

The district court and the parties recognize that the answer to the first certified question may turn on whether our holding in *Carter* was altered by *Bauman v. Day,* 892 P.2d 817 (Alaska 1995).

The Baumans alleged that the Days misrepresented that land the Baumans bought

from the Days was free of permafrost. The Baumans stopped paying property taxes in 1988 pending reassessment of value due to the permafrost. *Id.* at 820. The superior court dismissed the Baumans' fraud claim for untimeliness on summary judgment, because the Baumans reasonably should have discovered the permafrost no later than the time they stopped paying property taxes. *Id.* at 826. We affirmed that ruling.

*Bauman* did not involve a statutory discovery rule. We rejected the Baumans' argument that AS 09.10.230 controlled. *Id.* at 825. We cited *Carter* as holding "that a fraud victim need not have acted reasonably in order to obtain the benefit of AS 09.10.230's statutory discovery rule." *Bauman,* 892 P.2d at 825. Given the inapplicability of section .230, there was no need to consider whether a statutory discovery rule required actual knowledge.

We stated in a footnote in *Bauman:*

> The Baumans allege that in actions for fraud, this court's decision in *Palmer v. Borg–Warner Corp.,* 838 P.2d 1243 (Alaska 1992), replaces the *Lee Houston [& Assocs., Ltd. v. Racine,* 806 P.2d 848 (Alaska 1991)] "reasonable person" standard with an "actual knowledge" standard. In the context of a due diligence requirement for equitable estoppel, *Palmer* states that "a party should be charged with knowledge of [a] fraudulent misrepresentation or concealment only when it would be *utterly unreasonable* for the party not to be aware of the deception." *Id.* at 1251 (emphasis added). However, nothing in *Palmer* relaxes the "reasonable person" standard so much as to allow the statute of limitations to run only when the person has actual knowledge of the fraud.
>
> *Moreover, even if we were to require actual knowledge, the requirement would be satisfied by "express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry.'"* Poffenberger v. Risser, 290 Md. 631, 431 A.2d 677, 681 (Md.1981).

*Id.* at 826 n. 13 (second emphasis added). The emphasized language in the second paragraph of the footnote led the federal district

court to reconsider its earlier prediction, based on *Carter,* that this court would hold the City's common law fraud claim to have been timely filed. Because *Bauman* held that the time for claiming fraud began to run when the purchasers should have discovered that the vendors misrepresented the condition of the land, the emphasized language implies that actual knowledge of scienter is not required, and that inquiry notice is sufficient.

Footnote 13 does not cite *Carter* or the two limitations statutes (AS 09.10.120 and AS 09.10.230) containing their own discovery rules. The suggestion in the footnote that a requirement of "actual knowledge" would be satisfied by knowledge of circumstances that would have put a prudent person "on inquiry" was dictum, and was not made in the context of a discussion of a statutory discovery rule. Footnote 13 did not overrule or modify our holding in *Carter.*

We conclude that section .120 contains a statutory discovery rule similar to that in *Carter.* Section .120 does not include a requirement that the City, as an alleged fraud victim, have acted reasonably. *See Carter,* 755 P.2d at 1087. The City's fraud claim did not accrue and thus trigger the running of the limitations period before the City had actual notice of scienter.

Evidence of scienter is usually circumstantial, and a defrauded victim will normally have only indicia of scienter before suing. Notice of the scienter element could not require knowledge of conclusive evidence, because conclusive evidence of scienter is rarely available, even through exercise of discovery. If that level of notice were required, the limitations period for fraud would never begin running.

Amoco argues that knowledge of the defective condition of the pipe and belief that defendant's statements were untrue are enough. Because the *plaintiff's* knowledge of the inadequacy of a product or belief that there were inaccurate representations does not prove the state of the *defendant's* mind when the defendant made representations about the product's properties, we reject Amoco's suggestion. The knowledge that

section .120 requires is simply the discovery of facts that are evidence of the defendant's state of mind, i.e., evidence the defendant knew the representation was false when made.[9]

Carter does not identify what facts might have been sufficient to put the plaintiffs on actual notice of Hoblit's fraud before they learned the true state of the title in 1981. Because we rejected a requirement of reasonableness and plaintiffs sued well within the ten-year statutory period, it was not necessary to discuss whether learning that only Hoblit had title was sufficient evidence of scienter to trigger the running of the statute. In our view, the title search provided evidence of Hoblit's scienter, given the plaintiffs' alleged understanding, when they gave money to Hoblit, that they were contributing to the purchase price of property to be held in all three names. The deed was fundamentally inconsistent with the plaintiffs' understanding that they shared title and ownership with Hoblit. Although public records would have disclosed the true state of title, the parties' dealings before 1981 conveyed no facts to plaintiffs about the true terms of the deed or title, and thus no facts about Hoblit's scienter.

In Carter, it may be that the limitations periods for negligent and intentional misrepresentation (fraud) both began running with the title search. In other cases, knowledge of a misrepresentation does not necessarily also provide evidence of the defendant's scienter—i.e., evidence that the defendant intended to misrepresent—even though it triggers the running of the limitations statute for negligent misrepresentation.

9. In Barber v. National Bank of Alaska, 815 P.2d 857, 864 n. 15 (Alaska 1991), we held that the scienter required for Barber's punitive damages claim could be established by evidence that a bank employee knew that a foreclosure sale had already taken place when the employee told Barber several times that it had been postponed. Such evidence would also establish scienter in a fraud claim.

10. AS 45.50.471 et seq.

11. AS 45.50.531(f) provides: "A person may not commence an action under this section more than two years after the person discovers or reasonably should have discovered that the loss

## C. Alaska Statute 09.10.120 Governs the City's Unfair Trade Practices Claim.

We next consider whether the statute of limitations for public entities, AS 09.10.120, or the statute of limitations for the Unfair Trade Practices and Consumer Protection Act[10] (Act), AS 45.50.531(f),[11] applies to a municipality's claim under the Act.

The City argues that section .120 applies to all actions brought by a municipal corporation, and relies on Alascom, Inc. v. North Slope Borough, Bd. of Equalization, 659 P.2d 1175 (Alaska 1983).

Amoco replies that AS 09.10.120 is the general statute of limitations for municipal corporations, but that AS 45.50.531(f) is the controlling statute when a claim is made under the Act. It construes Alascom to mean only that section .120 trumps other limitations statutes contained in AS 09.10. In Alascom we applied the limitations period in section .120 rather than AS 09.10.070(a)(3).[12] Alascom, 659 P.2d at 1179.

Section .120 was enacted by the legislature in 1962. Id. The Act, however, was passed in 1970. See ch. 246, § 2, SLA 1970. As a general rule, " 'It is assumed that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter, and all should be construed together.' " Muller v. BP Exploration (Alaska) Inc., 923 P.2d 783, 788 (Alaska 1996) (quoting Hafling v. Inlandboatmen's Union of the Pacific, 585 P.2d 870, 877 (Alaska 1978)). The Act, however, fails to define the term "persons" in its limitations provision. See AS 45.50.531(f). Absent a definition expressly including municipal corporations or other public entities, we assume the

resulted from an act or practice declared unlawful by AS 45.50.471."

12. AS 09.10.070 provides in part:

(a) A person may not bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless the action is commenced within two years.

legislature did not intend when it passed the Act to adopt a limitations period for municipal corporations different than that specifically applicable to claims of public entities.

Moreover, *Alascom* provides guidance. We there held that section .120 applied in a property tax dispute, based on our review of the prior statute of limitations. 659 P.2d at 1179. The prior statute did not prescribe a special limitations period for political subdivisions, but rather prescribed the same limitations periods applicable to private parties. *Id.* We concluded that "the 1962 amendment [section .120] evinces a legislative intent that a general six-year statute of limitations applies when a borough pursues a claim, regardless of the nature of the claim." *Id.*

Amoco also claims that the more specific and recent statute of limitations should control. Section .120 is the older statute, and Amoco argues that it is the more general statute. Amoco quotes from *In re Estate of Hutchinson*, 577 P.2d 1074 (Alaska 1978):

> It is an established principle of statutory construction that all sections of an act are to be construed together so that all have meaning and no section conflicts with another. Further, where one section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible; but if there is a conflict, the specific section will control over the general.

*Id.* at 1075.

Here, as the City argues, it is not clear which statute is more specific. Section .120 applies to a specific party, a political subdivision, and AS 45.50.531(f) pertains to a specific cause of action. If section .120 governs a city's unfair trade practice claims, AS 45.50.531(f) will not become void or insignificant. *See, e.g., Journey v. State*, 895 P.2d 955, 958–59 (Alaska 1995) (holding that principles of statutory interpretation militate against a meaningless reading of a statute); *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1045 (Alaska 1992) (stating that statutes should be construed so that no part will be

inoperative or insignificant). The two-year limitations period in AS 45.50.531(f) will continue to apply to plaintiffs other than political subdivisions.

■ A final consideration supports our choice. If two limitations statutes may reasonably apply, preference is given to the longer limitations period. *See Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 855 (Alaska 1991) ("[D]oubts as to which of two statutes is applicable in a given case should be resolved in favor of applying the statute containing the longer limitations period."). A similar preference is expressed in AS 09.10.010.[13] That statute permits commencement of an action even after expiration of a period prescribed in AS 09.10 if a different period is prescribed elsewhere. Section .010 does not apply here, however, because AS 09.10 contains the longer limitation, and the shorter is found elsewhere. Our preference for the longer does not conflict with AS 09.10.010, contrary to Amoco's argument otherwise.

## IV. CONCLUSION

We interpret AS 09.10.120 to mean that a municipality's claims for negligent and intentional misrepresentation do not necessarily accrue simultaneously, and that a municipality's fraud claim accrues under AS 09.10.120 only after the municipality has actual notice of all essential elements of fraud, including scienter. We also conclude that the timeliness of a municipality's Unfair Trade Practices Act claim is governed by AS 09.10.120, not AS 45.50.531(f).

---

**13.** AS 09.10.010 provides: "A person may not commence a civil action except within the periods prescribed in this chapter after the cause of action has accrued, except when, in special cases, a different limitation is prescribed by statute."