David Alan WEIMER, individually and on behalf of all others similarly situated, Appellant,

v.

CONTINENTAL CAR & TRUCK, LLC, d/b/a Continental Nissan of Anchorage, Appellee.

No. S–13158.

Supreme Court of Alaska.

Aug. 13, 2010.

Chris Bataille, Walther & Flanigan, Anchorage, Trena L. Heikes, Eagle River, for Appellant.

Howard S. Trickey, Gary C. Sleeper, Matthew Singer, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

A consumer brought a putative class action lawsuit against an automobile dealership more than two years after he purchased a vehicle, alleging the dealership charged a document preparation fee not included in the vehicle's advertised price in violation of Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA). The dealership moved to dismiss the complaint, arguing that the two-year UTPA statute of limitations barred the consumer's claim. The consumer argued that the limitations period did not begin to run until he discovered it might be illegal to charge a document preparation fee

not included in the vehicle's advertised price. The superior court dismissed the complaint before any class certification proceedings, entered final judgment, and awarded costs and attorney's fees to the dealership. Because the superior court correctly interpreted the UTPA statute of limitations and did not otherwise err, we affirm the superior court's decision in its entirety.

## II. FACTS AND PROCEEDINGS

### A. Facts

On May 20, 2005, David Alan Weimer purchased a vehicle from Continental Nissan of Anchorage. According to Weimer, after he agreed to buy the vehicle and without prior disclosure, Continental added a $200 document preparation fee in the final sale paperwork. At the time Weimer believed the fee was legal.

Approximately two years later Weimer learned from a friend that it might be illegal for car dealerships to charge document preparation fees. Weimer then showed his purchase agreement to an Anchorage law firm. In April or May 2007 an attorney from the firm told Weimer the dealership might have unlawfully charged the document preparation fee.

### B. Proceedings

In September 2007 Weimer filed a class action complaint alleging that Continental "routinely breached" AS 45.50.471(b)(43) of the UTPA by charging fees and costs neither required by the state nor included in the vehicle's advertised price.[1] Weimer further alleged this conduct "was deceptive, fraudulent and misleading in violation of AS 45.50.471[ (b) ](11) & (12)" of the UTPA.[2] Weimer named himself the representative for a putative plaintiff class of "all persons who, since July 1, 2002, purchased from [Continental] a motor vehicle whose advertised price did not include dealer fees or costs . . . but who were charged such dealer fees or costs."

Continental moved to dismiss the complaint, arguing the UTPA's two-year statute of limitations barred Weimer's claims. After Weimer filed an opposition to the motion accompanied by his affidavit, the superior court treated Continental's motion as one for summary judgment.[3] The court ruled that the UTPA's two-year statute of limitations barred Weimer's claims, but in its decision the court discussed only the AS 45.50.471(b)(43) document fee claim and not the AS 45.50.471(b)(11)-(12) fraud claims.

---

1. AS 45.50.471(b)(43) states: "The terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts: . . . violating AS 45.25.400–45.25.590 (motor vehicle dealer practices)."

 AS 45.25.400 states in pertinent part:
 (b) A motor vehicle dealer may use the term "manufacturer's suggested retail price," "MSRP," or "list price" in an advertisement for the sale of a motor vehicle, subject to the restriction on price comparisons in AS 45.25.450 and the following:
 (1) the advertised price must reference the final price listed by the manufacturer on the monroney sticker, including accessories and options physically attached to the vehicle at the time of delivery to the dealer, plus any transportation charges, and minus all manufacturer discounts and savings;
 (2) the manufacturer's suggested retail price or the list price does not include charges added by the dealer or options added to the vehicle by the dealer; and
 (3) whenever using the term "manufacturer's suggested retail price," "MSRP," or "list price," the dealer may not represent that a buyer would save money by paying a price that is lower than the "manufacturer's suggested retail price," "MSRP," or "list price."

2. AS 45.50.471(b)(11) and (12) state:
 (b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:
 . . . .
 (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;
 (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged.

3. *See* Alaska R. Civ. P. 12(b) (providing that a motion to dismiss for failure to state a claim upon which relief can be granted "shall be treated as one for summary judgment" when "matters outside the pleading are presented to and not excluded by the court").

Weimer requested reconsideration for three reasons. First, he argued that for the UTPA statute of limitations period to begin running the plaintiff must discover that the act in question was illegal. Second, he argued that the court should not have dismissed his UTPA fraud claim because, based on *City of Fairbanks v. Amoco Chemical Company*,[4] the statute of limitations for fraud claims does "not start to run until the plaintiff learns of the facts constituting the fraud." Third, he argued that before dismissal the court should have "allow[ed] him an opportunity to amend the complaint to add a representative plaintiff whose claim was not subject to dismissal based on the statute of limitations." Weimer did not include a proposed amended complaint with his motion for reconsideration. The court denied Weimer's reconsideration motion, finding his arguments duplicative of those previously considered by the court and noting "no class has ever been certified" and "[i]f another plaintiff has a valid claim and wishes to bring a class action th[e]n a new action can be filed."

The court then granted Continental's motion for entry of final judgment and awarded Continental costs and attorney's fees. Weimer appeals.

## III. STANDARD OF REVIEW

 We review a grant of summary judgment de novo, affirming the summary judgment when there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law.[5] When reviewing a decision granting summary judgment, we view the facts in the light most favorable to the party against whom summary judgment was entered.[6]

 The applicable statute of limitations, the interpretation of that statute, and whether that statute bars a claim are questions of law.[7] We review such questions of law de novo, "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[8] The date on which a statute of limitations begins to run is a question of fact we review for clear error.[9]

 We review a superior court's decision denying leave to amend a pleading for abuse of discretion.[10] We also use the abuse of discretion standard to review an award of attorney's fees.[11] Abuse exists if the court's decision " 'is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.' "[12] Whether the court applied the proper legal analysis to calculate attorney's fees is a question of law we review de novo.[13]

## IV. DISCUSSION

### A. The UTPA's Two–Year Statute Of Limitations Barred All Of Weimer's UTPA Claims.

Paramount to resolving this case is the interpretation of the UTPA statute of limita-

4. 952 P.2d 1173, 1179–80 (Alaska 1998).

5. *See* Alaska R. Civ. P. 56(c); *Preblich v. Zorea*, 996 P.2d 730, 733 (Alaska 2000).

6. *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (citing *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267, 269 (Alaska 2005)).

7. *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 322–23 (Alaska 2006) (citing *Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005)); *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 448 (Alaska 2002) (citing *Gossman v. Greatland Directional Drilling, Inc.*, 973 P.2d 93, 95 (Alaska 1999)); *Brannon*, 137 P.3d at 284 (citing *Alderman v. Iditarod Props., Inc. (Alderman II)*, 104 P.3d 136, 140 (Alaska 2004)).

8. *Amoco Chem. Co.*, 952 P.2d at 1176 (citing *D.D. v. Ins. Co. of N.A.*, 905 P.2d 1365, 1367 n. 3 (Alaska 1995)).

9. *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 725 (Alaska 2006) (citing *John's Heat-

ing Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002)); *Smallwood*, 151 P.3d at 323.

10. *Cf. Alderman v. Iditarod Props., Inc. (Alderman I)*, 32 P.3d 373, 380 (Alaska 2001) (citing *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1348 (Alaska 1987)) (reviewing "decision to permit amendment of the pleadings for an abuse of discretion").

11. *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655, 659 (Alaska 2005) (citing *McNett v. Alyeska Pipeline Serv. Co.*, 856 P.2d 1165, 1167 (Alaska 1993)).

12. *Id.* (quoting *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 793 (Alaska 1997)).

13. *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001) (citing *Philbin v. Matanuska–Susitna Borough*, 991 P.2d 1263, 1266 (Alaska 1999)).

tions: "A person may not commence an action under this section more than two years after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471." [14]

■ This presents an issue of first impression—when does the statute of limitations begin to run on a UTPA claim? Weimer argues the two-year limitations period begins to run when the plaintiff discovers the defendant's acts were unlawful. Continental argues a plaintiff's subjective knowledge of the act's illegality is immaterial, and the statute begins to run when the plaintiff discovers a loss that resulted from the proscribed act.

When deciding questions of statutory interpretation, we examine the statute's language, its purpose, and its legislative history.[15] We have made clear that " '[t]he goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.' "[16]

Although the legislative history here is silent as to the legislature's intent,[17] the statutory language and structure are dispositive. The limitations period begins to run when a plaintiff discovers, or reasonably should have discovered, that the defendant's conduct caused a loss—not when a plaintiff discovers, or reasonably should have discovered, that the defendant's conduct was illegal.

The operative statutory language is "after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471." [18] The sentence's grammatical structure indicates the phrase "declared unlawful by AS 45.50.471" is not a separate element the plaintiff must discover or reasonably should have discovered before the limitations period begins to run, but rather serves to distinguish what type of act or practice, when discovered, triggers the limitations period. The phrase "declared unlawful by AS 45.50.471" modifies the nouns "act or practice"; it is an adjectival phrase, not a direct object of the verb "discovers" or of the verb phrase "should have discovered." [19] The grammatical structure dictates that the consumer must discover the causal link between the loss and the (unlawful) act for the limitations period to begin.

The "last antecedent rule" supports this grammatical interpretation of the UTPA statute of limitations. This statutory construction aid instructs: "Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." [20] The statutory construction aid continues by defining "last anteced-

---

14. AS 45.50.531(f).

15. *Amoco Chem. Co.*, 952 P.2d at 1178 (citing *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996)).

16. *Id.* (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987)).

17. The legislative history mentions the statute of limitations only cursorily. *See* Senate Bill (S.B.) 352, 6th Leg., 2d Sess., (June 6, 1970) (noting addition of "reasonably should have discovered" clause to AS 45.50.531(f)). Although not conclusive, the lack of comment implies the UTPA statute of limitations merely adopts Alaska's common law discovery rule, tolling the limitations period until the plaintiff is, or reasonably should be, aware of the elements of the cause of action. *See, e.g., Amoco Chem. Co.*, 952 P.2d at 1178 n. 8 (citing *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991)) (stating the common law discovery rule "delays accrual of a cause of action, and therefore the running of the pertinent limitations

statute, until the plaintiff is aware of or is deemed to be aware of all elements of the cause of action").

18. AS 45.50.531(f).

19. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 26, 1555 (2002) (defining "adjectival" as "of or belonging to an adjective; functioning as an adjective; adjective ('phrase) and "object" as "a noun or noun equivalent denoting in verb constructions that on or toward which the action of a verb is directed either actually or as conceived ... and either immediately ... or less immediately.").

20. 2A Norman J. Singer, STATUTES & STATUTORY CONSTRUCTION, § 47.33 (6th ed.2000); *see also Twenty–Eight (28) Members of Oil, Chem. & Atomic Workers Union, Local # 1–1978 v. Employment Sec. Div. of Alaska Dep't of Labor*, 659 P.2d 583, 588 n. 4 (Alaska 1983) (recognizing the last antecedent rule to "state[] that a limiting clause in a statute is generally to be restrained to the last antecedent").

ent" to mean "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence."[21] The last antecedent before the adjectival phrase "declared unlawful by AS 45.50.471" is the phrase "act or practice."[22] Extending the adjectival phrase beyond that antecedent is illogical—the UTPA does not declare "the loss" unlawful, nor therefore does the phrase extend to "person discovers." Instead the adjectival phrase defines the type of act or practice that violates the statute.

In both his superior court briefing and his briefing to us, Weimer posited that *City of Fairbanks v. Amoco Chemical Company* supports his position that the UTPA's statute of limitations does not begin to run until a plaintiff discovers that an act is illegal under the UTPA. But *Amoco Chemical Company* actually undermines Weimer's position.

In *Amoco Chemical Company*, the defendant raised a statute of limitations defense when sued by the municipality for common law fraud and a UTPA violation.[23] We held that AS 09.10.120(a), a special six-year statute of limitations for public entities, applies to a municipality's common law fraud claim.[24] We also noted that the statute contained the following discovery rule language specifically for common law fraud claims brought by public entities: "the limitation commences from the time of discovery by the aggrieved party of the facts constituting the fraud."[25] Due to this discovery rule language, we held that the statute did not begin to run in common law fraud claims brought by a public entity until the public entity had actual notice of the defendant's scienter.[26] We then addressed whether the newer two-year UTPA statute of limitations or the older six-year public entity statute of limitations applied to the municipality's UTPA claim.[27] Without

discussing whether the two-year UTPA statute included the same discovery rule, we held that the longer limitations period in AS 09.10.120(a) applied to the municipality's UTPA claim.[28]

*Amoco Chemical Company* is distinguishable from Weimer's situation: (1) Weimer is not a public entity entitled to AS 09.10.120(a)'s statute of limitations;[29] and (2) the absence of AS 09.10.120(a)'s express discovery rule for fraud claims in the UTPA's statute of limitations is telling—if the legislature had intended the UTPA's statute of limitations to encompass the same discovery rule as AS 09.10.120(a), it would have used the same language.

We therefore agree with Continental that the UTPA's statute of limitations begins to run when a consumer discovers or reasonably should have discovered the prohibited conduct caused a loss. When the consumer discovers or reasonably should have discovered the conduct was prohibited is immaterial to the UTPA limitations period. We therefore affirm the superior court's grant of summary judgment because when Weimer purchased the vehicle he became aware of the alleged unlawful practice (the document fee), the loss (his payment of the fee), and the causal relationship between the two.

**B. It Was Not Error To Enter Final Judgment.**

**1. Personal claims**

Weimer argues the superior court erred by dismissing his fraud claims on the basis of the UTPA statute of limitations and by denying his claim for injunctive relief.

Weimer's argument about the dismissal of his UTPA fraud claims has no merit. Weimer's claims, including his fraud claims, were

---

**21.** Singer, note 20, above (internal quotation marks omitted).

**22.** AS 45.50.531(f).

**23.** *Amoco Chem. Co.*, 952 P.2d at 1175–76.

**24.** *Id.* at 1177–80.

**25.** *Id.* at 1177 (quoting AS 09.10.120(a)) (emphasis omitted).

**26.** *Id.* at 1179.

**27.** *Id.* at 1180–81.

**28.** *Id.*

**29.** AS 09.10.120(a) applies to "[a]n action brought in the name of or for the benefit of the state, any political subdivision, or public corporation."

based on the UTPA. Thus Weimer's claims, including his fraud claims, were subject to the UTPA's statute of limitations. It is true that in its summary judgment decision the superior court noted only Weimer's AS 45.50.471(b)(43) document fee claim. But after Weimer filed a motion for reconsideration arguing that the statute of limitations for fraud claims does not begin to run "until the plaintiff learns of the facts constituting the fraud," the superior court denied the motion, stating that the argument raised had already been considered.

On appeal, Weimer first argues that "a different statute of limitations applies to claims based on fraud." But Weimer does not point to any other potentially applicable statute of limitations or make any argument why the UTPA's statute of limitations does not apply to his UTPA fraud claims. Weimer then reiterates his argument that the statute of limitations for fraud claims does not begin "to run until the plaintiff learns of the facts constituting the fraud," citing *Amoco Chemical Company*. But as explained above that case is not applicable here.

 As to Weimer's claim for injunctive relief, Weimer lacks standing to maintain such a claim because he does not assert an intent to buy another vehicle from Continental. Although Alaska courts "broadly interpret the concept of standing to favor increased accessibility to judicial forums," a party must have "a 'sufficient personal stake in the outcome of the controversy'" to have standing to sue.[30] Without an express intent

to purchase another vehicle, Weimer has not demonstrated a personal stake in injunctive relief. There was therefore no error in entering final judgment on Weimer's personal claims.

## 2. Class claims

Weimer also argues that even if his personal claims lacked merit, he represented the class claims and therefore dismissal of the class action was error. Alternatively Weimer argues he should have been given an opportunity to amend the complaint to add or substitute a named plaintiff with a viable UTPA claim.

 A court may rule on dispositive motions before ruling on class certification.[31] Generally if a court dismisses the plaintiff's claims on a dispositive motion before class certification, the class claim is dismissed as well because no viable dispute between the parties exists.[32] Here the superior court dismissed the class claims before deciding class certification because Weimer failed to bring an action within the limitations period and thus he had no viable claims. It is possible that other potential class members have viable claims against Continental, but nothing justifies an exception to the general rule of dismissal in Weimer's case.[33] The type of class claims asserted here are easily adjudicated by another plaintiff.

Weimer also argues the superior court erred by denying his request to allow him an opportunity to amend the complaint to in-

---

**30.** *Mat–Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.*, 218 P.3d 698, 704 n. 24 (Alaska 2009) (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) and citing *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976)).

**31.** *See Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1221–22 (Alaska 2009) (addressing standing before class certification); *Gold Bondholders Protective Council v. Atchison, Topeka & Santa Fe Ry. Co.*, 649 P.2d 947, 951 (Alaska 1982) (addressing motion to dismiss before class certification).

**32.** *See Gold Bondholders*, 649 P.2d at 951 (granting defendant's motion to dismiss before considering class certification); *see also Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007) ("[I]f the would-be representative's claim becomes moot before certification, then the case must be dismissed . . . unless someone else inter-

venes to carry on as the representative.") (internal citation omitted).

**33.** *See Gerstein v. Pugh*, 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (explaining that when a class claim is "capable of repetition, yet evading review" "the termination of a class representative's claim does not moot the claims of the unnamed members of the class"). The UTPA's statute of limitations—two years—provides sufficient time for a plaintiff who alleges an injury like Weimer's to file suit. There also is no indication Continental's summary judgment efforts were meant to inappropriately frustrate the class action. *See Bertrand*, 495 F.3d at 456 (recognizing another exception to dismissal when the defendant's behavior prevents "effectual relief to a larger class of victims").

clude a plaintiff whose claim was not barred by the UTPA statute of limitations, relying in part on *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*[34] In *Neese*, several plaintiffs filed a class action alleging UTPA violations against a group of auto dealerships.[35] Before certifying the class, the superior court dismissed the claims against two of the dealerships for lack of standing by any plaintiff.[36] It then entered a final judgment in favor of the two dismissed dealerships under Alaska Rule of Civil Procedure 54(b).[37] Soon thereafter the plaintiffs filed a motion to amend their complaint along with a proposed amended complaint that added class representatives with viable claims against the two dismissed dealerships.[38] The superior court failed to explicitly rule on the motion to amend, but affirmed its entry of final judgment in favor of the dismissed dealerships.[39]

■ On appeal, we concluded the superior court should have afforded the plaintiffs an opportunity to remedy the lack of standing against the dismissed dealerships before final judgment.[40] We based our conclusion on the plaintiffs' clear intent to add class representatives with standing against the dismissed dealerships and the defendants' failure to "show hardship or any other valid reason for final judgment."[41] We noted the superior court had failed to properly balance the "general policy against piecemeal appeals" against the defendants' reasons for final judgment.[42] We therefore held "it was an abuse of discretion for the court to find

that there was no just reason for delay and to enter final judgment."[43]

*Neese* is distinguishable from Weimer's case. First, here the sole plaintiff, Weimer, failed to assert a viable claim against the sole defendant, Continental.[44] Second, because no named plaintiff or defendant remained after the court entered final judgment, Weimer's case does not raise concerns about "piecemeal appeals."[45] Given these fundamental differences, *Neese* does not guide our decision here.

■ Alaska Rule of Civil Procedure 15(a) instructs courts to grant leave to amend pleadings "when justice so requires."[46] We have interpreted that Rule to set out a balancing test, weighing the prejudice to the nonmovant against the hardship to the movant.[47] A court may deny a motion when an amendment is "unduly delayed, offered in bad faith, or futile."[48] Here Weimer had ample time to find and substitute potential plaintiffs but failed to do so. And Weimer suffered no personal hardship from the denial of his request for an opportunity to amend because he had no viable claims. We therefore affirm both the superior court's denial of Weimer's request for opportunity to amend and the entry of final judgment.

### C. It Was Not Error To Award Continental Costs And Attorney's Fees.

■ The superior court awarded Continental $2,000 in attorney's fees under Alaska

---

34. 210 P.3d at 1223–25.

35. *Id.* at 1215–16.

36. *Id.* at 1216–17.

37. *Id.* at 1217.

38. *Id.* at 1222.

39. *Id.*

40. *Id.* at 1222–25.

41. *Id.* at 1225.

42. *Id.* at 1224.

43. *Id.* at 1225.

44. Alaska R. Civ. P. 54(b) states in pertinent part:

When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

45. *See Neese*, 210 P.3d at 1223 (citing *Cole v. State Farm Ins. Co.*, 128 P.3d 171, 173 n. 2 (Alaska 2006)) (emphasizing "that partial final judgments deserve careful appellate review because of the law's fundamental aversion to piecemeal appeals").

46. Alaska R. Civ. P. 15(a).

47. *Betz*, 742 P.2d at 1348 (quoting *Shooshanian v. Wagner*, 672 P.2d 455, 458 (Alaska 1983)).

48. *Alderman I*, 32 P.3d at 395 (citing *Betz*, 742 P.2d at 1348).

Rule of Civil Procedure 82 and approximately $500 in costs under Alaska Rule of Civil Procedure 79. Weimer contests both awards, citing *Monzingo v. Alaska Air Group, Inc.*[49] to support his claim that the imposition of costs and attorney's fees is available only when the unsuccessful class representative's individual substantive claims are litigated. Weimer contends that awarding costs and attorney's fees against him was error because a statute of limitations defense is procedural, not substantive. Weimer misconstrues *Monzingo.*

The narrow issue in *Monzingo* was "whether a named plaintiff can be held liable for attorney's fees and costs incurred that have no bearing on the merits of the named plaintiff's lawsuit."[50] Specifically, *Monzingo* addressed the imposition of attorney's fees on the class representative "when those fees include extensive class certification preparation that falls outside the substantive merits of the named plaintiff's case."[51] *Monzingo* held the policies behind Rule 82 did not support awarding such fees, emphasizing the distinction between fees incurred in litigating the merits of the named plaintiff's own claim and those incurred in litigating class certification issues.[52] The distinction lies in the plaintiff's financial incentive to serve as class representative—a plaintiff has a financial incentive to pursue his or her own claim, but is unlikely to risk a greater adverse attorney's fees award arising from class certification issues involved in litigating others' claims.[53] Thus when *Monzingo* referred to the "substantive merits" of the plaintiff's claim, that term was used to distinguish class certification issues, which were unrelated to the validity of the plaintiff's own claim.

The superior court's award of costs and attorney's fees against Weimer was not an abuse of discretion. Class certification was never litigated because the superior court entered summary judgment on statute of limitations grounds. The issues litigated did not concern class certification (in which Weimer presumably lacked a financial inter-

est) but focused only on the viability of Weimer's own claims (in which he had a financial interest). Neither the language of nor the policy behind *Monzingo* supports Weimer's argument. Accordingly, because Weimer failed to demonstrate the superior court abused its discretion—and nothing in the record supports such a conclusion—we affirm the superior court's award of costs and attorney's fees to Continental.

## V. CONCLUSION

We AFFIRM the superior court's decision in its entirety.

EASTAUGH and FABE, Justices, not participating.

**49.** 112 P.3d 655, 665, 668 (Alaska 2005).

**50.** *Id.* at 665.

**51.** *Id.* at 665–66.

**52.** *See id.* at 667–68.

**53.** *See id.* at 667.