## Kinslow v. Combs' Adm'r.

Oct. 17, 1941.

Terry L. Hatchett for appellant.

Richard L. Garnett for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

T. Y. Combs died in August 1939. Henry Span qualified as administrator of his estate, and thereafter, and upon rejection of her claim, Mrs. Kinslow filed suit seeking to recover of the estate $2 per day for 497 days for services rendered to Mr. Combs, such as keeping house, cooking and serving meals, and waiting upon him. In answer the defendant while denying that any sum was due plaintiff, admitted *some* service, but specifically plead satisfaction by virtue of the following document, which appellant and her husband signed:

"To whom it may concern: This is a final agreement *intered* into this Sept. 2, 1939, between Andy Kinslow and his wife Annie Kinslow of the first part and the heirs of T. Y. Combs of the second part. The party of the first part * * * do agree to do as follows:

"Relinquish all *rites* and claims against the estate of T. Y. Combs and give peaceful possession of *sed* property of T. Y. Combs which we are now living on. Possession on or before Dec. 31, 1934, the

date of our contract for farming *sed* property, for the following described property and $15.00 cash, the T. Y. Combs' team of black mules, wagon and harness, and all the old corn in the crib, two stacks of old hay on premises; T. Y. Combs' share of the chickens on premises of T. Y. Combs; share of the crop on the land we are farming on T. Y. Combs'. Andy J. Kinslow. Also all the cured meat and lard and canned fruit left on the premises of the T. Y. Combs' house at the time of this settlement. Also full possession of stock barn for my stock (Andy J. Kinslow) until my contract on *sed* land expires Dec. 31, 1939. We further agree to continue to help the heirs work on the premises until Sept. 6, 1939, without further pay.

"We, Andy and Annie Kinslow, do further agree that this is full pay for all claims and damages for caring for T. Y. Combs up until this date and forever. We sign this agreement * * * in the *presents* of M. F. Kruse and his wife Lula C. Kruse, Danna Mourer. A. J. Kinslow, Annie Kinslow."

Mrs. Kinslow in reply denied settlement in whole or in part, asserting the document presented was not intended to be a settlement of her claim. Affirmatively she plead, substantially, that at the time of Mr. Combs' death she and her husband had a tenancy contract, and that she understood that the release contract related solely to the rescission contract, and but for which she would not have signed; secondly, she contended that the purported release, in so far as it related to her claim, was without consideration, and that her signature to the document was obtained by fraud on the part of the heirs; that at the time she was ill; under the influence of some "powerful medicine," and unable to read, and though read in her presence her condition was such that she did not grasp its meaning. She says it was represented to her by the heirs that the release related solely to the release of the contract of tenancy. Lastly she asserts that at the time the agreement was signed, it did not contain the paragraph which purported to release her claim for caring for T. Y. Combs, and that her name and the husband's name had later been added to that part of the writing, wherefore the writing should be held void.

The personal representative denied the affirmative allegations of the reply. The court instructed that the release was binding on the plaintiff, unless the jury should believe from the evidence that Mrs. Kinslow at the time of the contract was so ill as to render her unable to read the document, or to grasp its meaning, and at said time the heirs took advantage of her physical condition and fraudulently procured her signature. Further, if the jury believed from the evidence that Mrs. Kinslow believed that the sole purpose of said contract was to induce her and her husband to surrender possession of the farm, and she signed the paper under such belief, and did not know its terms and conditions, nor was afforded an opportunity of knowing said purport, the jury should find for plaintiff. The foregoing instructions were given by the court without tender of others by either party. The jury returned a verdict for defendant and this appeal follows.

Mrs. Kinslow testified that the contract was presented about a week after Mr. Combs' death. She had been and was suffering from an ailment which caused much pain and which required the taking of some drug, which she says made her "giddy-headed, numb and draggy." She admits she signed her name at the "bottom of the paper." She relates that the heirs came in and asked her husband for a settlement. "They wanted the premises cleared." There was discussion as to terms and "I told them whatever he did was all right with me." She says they did not discuss "what I had done," but after other discussion she signed the paper, thinking it only related to the premises. She said that she could read "a little," but the heirs did not offer her the paper, and if they had her condition was such that she would hardly have understood it. "They did not tell me anything more than that we was signing to clear the premises and give us the team before the end of the year."

Later she admits she heard some reading, but did not hear them read the last clause though it "was attempted to be read," and on cross-examination she substantially admits that the whole paper was read. There follows then quite a bit of testimony by others as to Mrs. Kinslow's physical condition, which shows that she was ill at times, and on September 2d, but not to such an

extent then as to prevent her from knowing what was under consideration.

Gilbert Peck, a nephew of Combs, and several other of the heirs were present at the Combs' house when the contract was discussed and executed. Peck wrote the contract, and says that all its terms and conditions were discussed at Mrs. Kinslow's breakfast table before he reduced it to writing. Mrs. Kruse and others testified that the parties discussed the terms of settlement. Several witnesses testified that Mrs. Kinslow shortly after September 2d had remarked that she was well pleased with the settlement, including the claim for services. On rebuttal Mrs. Kinslow admitted that she had said at the time of signing that it was agreeable, but that statement only related to the giving up of the place; she denied that she said to any one after signing that the settlement was satisfactory.

Appellant in brief discusses only one question. The insistence is that the court excluded certain evidence, which had it been admitted would have strengthened evidence of fraud. At the outset it may be said that there was no proof to show that the last clause of the contract was inserted after signing.

Mrs. Kinslow undertook to testify as to the value of the articles mentioned in the contract, all admittedly delivered. As example, she said that the mules were worth only $10; wagon and harness, $10, and so on with some articles named. She offered to prove the same facts by an appraiser, and to introduce copy of appraisement. The court sustained objections to this line of testimony, and avowals were made in each instance, the two above being exemplary. Her valuations were lower than shown by appraisement, but under avowals it develops that, including some articles upon which she placed no value, and some not appraised, the total value of property passing under the contract, did not exceed $200.

Counsel contends that her case depended upon her allegations that the heirs took advantage of Mrs. Kinslow's physical condition and practiced a fraud upon her by representing that the writing only went to the matter of rental release; that the release at the time of signing did not contain the last clause, and no consideration. The last ground may be eliminated from discus-

sion, since it is only argued that insufficient consideration tends to accentuate the charge of fraud, and at this point it may be noted that Mrs. Kinslow in testifying made no mention of any agreement with Mr. Combs to render services, character or quantum of services rendered, nor the time of rendition. This failure was perhaps due to the fact that by pleading the defendant admitted rendition of "some" service, though specifically denying that the estate owed her for any part of her claim. Such pleading could not be construed as an admission that she rendered 497 days service at $2 per day.

In the absence of any proof on the subject the question of consideration is left in an uncertain state. Mrs. Kinslow did not have an "undisputed claim for $994." The question of adequacy would also depend somewhat on the terms, conditions and extent as to time of the rental contract, not shown in pleadings, proof or briefs.

To all intents the case started out as an ordinary action; appellant's pleading transformed it into a suit to cancel the alleged contract on the grounds of fraud. Regardless of the nature of the action, when one pleads fraud as a basis for cancellation of a contract, every element essential to sustain the charge must be proven, which, as we said in Collins-Moore & Co. v. Clement, 256 Ky. 731, 77 S. W. (2d) 1, 3, "Reduced to extreme terseness" are material representation; falsity; scienter or recklessness; intention; reliance, and injury.

Here appellant failed totally to prove any false representation or reckless disregard of truth in respect of any matter involved in the transaction. Mrs. Kinslow does not say that any one of the heirs present, by word or act, led her to believe that she was only signing such a contract. She fails to show by proof that any reference was made as to the value of her services or the value of the articles of personal property passing, matters which must have been more definite in her and her husband's minds, than in the knowledge of the other contracting parties.

It is true that where releases have been obtained on grossly inadequate consideration, we have said, Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. (2d) 423, 430, in dealing with what we found on clear proof of overreaching, that "the amount paid [gross negligence was

conceded] in settlement [of the claim] was palpably inadequate. It required but slight additional evidence of fraud in the obtention of the release to overcome such a settlement." A reading of the case will demonstrate that we concluded that the release, without regard to the inadequacy of the amount paid in settlement was induced by false representations. Further, we found that the parties were not there "dealing at arm's length."

The general rule is that a presumption of fraud does not arise out of the bare fact that consideration was inadequate; inadequacy alone is not sufficient to show fraud in law or equity. Gross unfairness in a transaction may be ground of presumption of fraud, and may be sufficient if it be such as to shock the conscience, or cause the mind to revolt; in such cases it may constitute evidence in support of a finding of fraud. Inter-Southern Life Ins. Co. v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332. Here it is impossible for this court to say that the consideration for the release was so inadequate as to shock the conscience; this is true because of the lack of proof of quantum of services rendered, value thereof, or how much of the consideration might have been for the release of rental contract, on which points no evidence was introduced or instruction offered. And the court, under the circumstances and proof, was justified in submitting to the jury solely the question of cancellation of the contract.

It is not at all difficult from a reading of the proof to understand that the husband was willing to forego the rental contract for $15, and the team of mules. If this is true, then the balance of the consideration must have been for the release of any claim the parties had for caring for Mr. Combs. Mrs. Kinslow's testimony as to whether or not the paper in its entirety was read to her is not convincing. When asked if the last clause was read to her, she replied, "Well I wouldn't say it was." Asked if she understood what was being read, she answered, "I understood that we were to move off the premises." On cross-examinatoin she said the paper was read, and that she heard it. Again: "Mrs. Kinslow when the heirs came up there to make a settlement with *you* after you had talked it over and decided just what they were going to pay you, you told them if it was satisfactory with your husband it would be all right with you?" Ans. "Yes."

804

We have read the testimony presented with care, and we fail to find any proof on the part of appellant which would justify the conclusion that any one of the opposing interested parties made any statement which would indicate a representation that the contract related solely and alone to the foregoing of the rental contract. The contrary seems to be true. Notwithstanding the heirs camped on the Kinslows for several days, as far as appears from the testimony, she made no mention of her claim for services rendered to Mr. Combs, though it is obvious from reading the contract that the heirs knew she was asserting some claim.

In the absence of any basic proof of fraud or over-reaching, we are unable to see how the question of value of the property passing, though inadequate, would or could supply the necessity. The cancellation of an executed contract is an exercise of the most extraordinary power of the courts, and such power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the proof be clear and convincing.

We find nothing after a careful review of the record which would justify us in disturbing the verdict of the jury and the judgment entered upon it.

Judgment affirmed.