*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHAVTZ SEALS,

　　　　　　　*Plaintiff-Appellant,*

　　*v.*

　　　　No. 07-4415

GENERAL MOTORS CORPORATION,

　　　　　　　*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-01592—Donald C. Nugent, District Judge.

Argued: September 17, 2008

Decided and Filed: November 17, 2008

Before: GUY, BATCHELDER, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jeffrey L. Austin, KEIS GEORGE, Cleveland, Ohio, for Appellant. Patrick N. Fanning, LATHROP & GAGE, Kansas City, Missouri, for Appellee. **ON BRIEF:** Jeffrey L. Austin, KEIS GEORGE, Cleveland, Ohio, for Appellant. Patrick N. Fanning, LATHROP & GAGE, Kansas City, Missouri, for Appellee.

　　　GUY, J., delivered the opinion of the court. BATCHELDER, J. (p. 7), and McKEAGUE, J. (pp. 8-9), delivered separate concurring opinions.

---

## OPINION

---

　　　RALPH B. GUY, JR., Circuit Judge. Plaintiff Chavtz Seals, who was injured at work, brought this action asserting a workplace intentional tort claim against defendant General Motors Corporation (GM). The district court granted GM's motion for summary judgment, finding (1) that this claim was barred by a release plaintiff signed in connection with a voluntary buyout of his employment, and (2) that plaintiff failed to demonstrate a genuine issue of material fact with respect to his intentional tort claim. Seeking reversal, plaintiff argues that there was a genuine issue of material fact concerning the intent of the parties to the general release under the circumstances. On the merits, plaintiff contends that the district court erred in concluding that there was no evidence either that GM had "knowledge" of the allegedly dangerous condition or that GM knew an injury was "substantially certain" to result from that condition. Because we conclude that the release barred plaintiff's claim, we affirm the judgment in favor of GM.

1

**I.**

Plaintiff began working at GM's metal stamping plant located in Parma, Ohio, in November 1998, and was injured while working on a press assembly line in the early hours of June 22, 2004. Plaintiff was working as a "floater" on the third shift, and was assigned to a six-person group on a press line where he had not worked in over a week. He started in the "buttons" position, then rotated to an assembly position loading parts into a large metal basket that sat on a tilt table. The height and angle of the tilt table could be adjusted to fit the employee loading parts into baskets. Along the edge of the table were five metal retaining plates, each 6 to 8 inches in size, which were designed to hold the baskets on the table when it was tilted.

Moving to the assembly position, plaintiff raised and tilted the table and proceeded to fill the basket with parts for approximately 15 minutes. Then, as he placed a part inside, the basket began to slide toward him. Plaintiff grabbed it and tried to hold it, but the basket, weighing more than 700 lbs., slid off the table, struck him, and pinned him against the conveyor belt. Plaintiff suffered injuries to his knees, feet, and back of his thighs. After the accident, the tilt table was found to be missing the middle retaining plate where the basket slid off.

Plaintiff had not noticed whether the plate was missing before he was injured, but stated that several unnamed coworkers told him that it had broken off a week earlier. The missing plate was found nearby, although there is a dispute about where exactly it was found. A supervisor named Gary Buddie testified that he approached, saw that the plate was missing, and looked down to find the missing plate on the floor next to plaintiff. Plaintiff, on the other hand, said he saw Buddie walk directly to the other side of the conveyor belt and retrieve the missing plate as if he already knew where it was.

Buddie, the third-shift plant superintendent, and Royal Fenderson, another supervisor that night, prepared an incident report the next day that included under "possible root causes" that the table was not repaired timely and that a repair was not requested. Buddie, Fenderson, and other GM witnesses all testified both that they did not know whether the plate broke off at the time of the accident or some earlier time, and that they were not aware of any report of damage to the table before the accident. An investigation by GM safety supervisor Nicole Misterka resulted in a written report dated June 30, 2004, in which she stated that the "retaining plate had broken off from the tilt table a week prior to the accident," and that the "weld had broke[n] and had been reported but was not repaired." Misterka testified that she did not recall who had given her this information. This report was signed by Buddie, Fenderson, and Area Manager Dave Sands. There were apparently no injuries resulting from broken or missing retaining plates prior to this incident.

Plaintiff's injuries kept him off work for close to a year, but he returned to work and was not planning to leave his employment at GM. GM announced a voluntary buyout opportunity under the terms of a "Special Attrition Plan GM-UAW Plants," memorialized in the National Agreement and Memorandum of Understanding dated March 22, 2006. Plaintiff filed this action in state court on May 26, 2006, GM was served with the complaint on June 5, 2006, and GM removed the action to federal court on June 29, 2006.[1]

On June 20, 2006, plaintiff accepted GM's buyout offer and signed two documents: in one, the Special Attrition Plan, plaintiff agreed to voluntarily quit in exchange for a lump-sum payment of $70,000; and in the other, entitled Special Attrition Plan Conditions of Participation Release Form, plaintiff agreed, among other things, to a release of all claims, demands, or causes of action,

---

[1]The two-count complaint included a product liability claim against a John Doe, which was dismissed without prejudice. This appeal raises no issues with respect to that claim.

known or unknown, related to his employment.  Specifically, the paragraph releasing claims provided, in full, as follows:

> In consideration for participation in the Special Attrition Plan, I hereby release and forever discharge GM, Delphi the UAW and their officers, directors, agents, employees, stockholders and employee benefit plans from all claims, demands and causes of action, (claims) known or unknown which I may have related to my employment or the cessation of my employment or denial of any employee benefit. This release specifically includes, without limitation, a release of any claims I may now have under The Employee Retirement Income Security Act of 1974 (ERISA); the Age Discrimination in Employment Act (ADEA), which prohibits discrimination based on age; Title VII of the Civil Rights Act of 1964 which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act; state fair employment practices or civil rights laws; and any other federal state or local laws or regulations, or any common law actions related to employment discrimination. This includes without limitation any claims for breach of employment contract, either express or implied, and wrongful discharge.  This release does not waive claims that arise only after the execution of this release.

The next paragraph provided the following advice regarding revocation and consultation with counsel.

> I acknowledge I have been given a period of forty-five (45) days to review and consider this agreement before signing it.  If I execute this agreement, I shall have a period of seven (7) days to revoke, in writing, my acceptance and this agreement shall not be effective until expiration of this seven (7) day period.  I have also been advised to consult with an attorney, but understand whether or not I do so is my own decision.  I understand that once the seven (7) day revocation period expires, my acceptance is irrevocable.

Plaintiff did not revoke his acceptance, and his employment terminated effective July 17, 2006.

GM filed an answer in this case on July 6, 2006, without asserting the recently executed release as an affirmative defense.  Defense counsel discovered the release in producing plaintiff's personnel file in discovery, and alerted plaintiff's counsel that GM would assert the release as a bar to the intentional tort claim.  GM did not move to amend its answer, however, until after its motion for summary judgment was filed in July 2007.  The district court granted GM leave to amend in a marginal order, and then granted GM's motion for summary judgment for the reasons stated in the written decision entered August 30, 2007.  This timely appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).  Summary judgment is appropriate when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.     Waiver

Without articulating a separate claim of error, plaintiff complains that, by granting GM leave to amend its answer, the district court improperly gave GM a procedural advantage and undercut his position that GM had waived the affirmative defense by failing to include it in its answer.  To be

sure, GM's answer did not assert the recently executed release as an affirmative defense as required by Fed. R. Civ. P. 8(c). We have explained, however, that failure to raise an affirmative defense by responsive pleading does not always result in waiver of the defense—such as, when the plaintiff receives notice of the affirmative defense by some other means. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993). Here, plaintiff's counsel had notice that GM intended to assert the release as an affirmative defense once the documents were discovered by defense counsel in producing plaintiff's personnel record.

Moreover, as a practical matter, there are exceptions to the general rule of waiver, including when amendment is permitted under Fed. R. Civ. P. 15(a). *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) ("Simply put, Rule 15(a) allows a party to amend his pleading to assert an omitted affirmative defense, . . . which is precisely what the defendant did in this case."). Under Rule 15(a), leave to amend a pleading shall be freely given "when justice so requires." Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). Review of the district court's decision on a motion to amend is for abuse of discretion. *Phelps*, 30 F.3d at 662.

Although GM did not move to amend its answer until after the summary judgment motion had been briefed, plaintiff had both notice that the release would be asserted as a defense and an opportunity to argue that the release did not encompass the workplace intentional tort claim in this case. While plaintiff would like to have relied on the pleading deficiency to preclude GM from asserting the release as an affirmative defense, we cannot conclude that the district court abused its discretion by allowing GM to amend its answer. *See*, *e.g.*, *Estes v. Ky. Utils. Co.*, 636 F.2d 1131, 1134 (6th Cir. 1980) (holding no abuse of discretion in allowing defendant to amend its answer to assert affirmative defense of exclusivity of workers' compensation under Kentucky law).

Finding that it was not error to consider the affirmative defense, we turn to the plaintiff's further contention that the district court failed to consider all the evidence concerning the scope of the release and to view the evidence in the light most favorable to plaintiff.

## B. Release

The district court found that GM was entitled to summary judgment as a matter of law because the express terms of the release encompassed plaintiff's claim against GM for workplace intentional tort under Ohio law. Plaintiff faults the district court for relying solely upon the language of the release, without considering the surrounding circumstances and examining the parties' subjective intentions through the affidavits submitted by plaintiff and his attorney. This claim of error is without merit.

Under Ohio law, which the parties agree applies in this diversity action, a release is a contract subject to the rules governing the construction of contracts. *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992); *Task v. Nat'l City Bank*, No. 65617, 1994 WL 43883, at *4 (Ohio Ct. App. Feb. 10, 1994) (unpublished). In *Shifrin*, the Ohio Supreme Court reiterated that, generally, "courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement," 597 N.E.2d at 501, and "[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions," *id.* at 500.

Plaintiff argues that the terms of the release are not controlling when there is an issue whether the parties actually intended that it release all claims. In support of this proposition,

plaintiff relies on the decision in *Sloan v. Standard Oil Co.*, 203 N.E.2d 237 (Ohio 1964). To be sure, *Sloan* does state that "[w]hether the parties to a release actually intended to discharge all liability is a question of fact[.]" *Id*. at 238, syllabus ¶ 2. We decline to read this in a manner that would conflict with the later decision in *Shifrin*, as the first paragraph of the syllabus indicates that *Sloan* applies to efforts to avoid a release on the grounds of "mutual mistake." Specifically, the court in *Sloan* held that: "A release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake . . . of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties *intended* that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished." 203 N.E.2d at 238, syllabus ¶ 1.

The appellant argued in *Shifrin* that the releases contained language that was contrary to the parties' subjective intent at the time the releases were signed. However, the court nonetheless held that, "having failed to demonstrate fraud, mutual mistake or the existence of an ambiguity on the face of the contract that would allow that court to vary the clear terms of the contract, parol evidence [could] not be used to demonstrate a 'latent ambiguity' in the contract." *Shifrin*, 597 N.E.2d at 502. In this case, plaintiff agreed to a broad release of claims against GM, including "all claims, demands and causes of action," "known or unknown," "which I may have related to my employment." This plainly and unambiguously includes the plaintiff's then existing claim, recently asserted in the pending lawsuit, for workplace intentional tort seeking damages from his employer for injuries sustained in the course of his employment.

Nor are we persuaded that the evidence, taken in the light most favorable to plaintiff, was sufficient to create a jury-submissible question on the issue of "mutual mistake." A mutual mistake requires a mistake made by both parties regarding the same fact. *Reilley v. Richards*, 632 N.E.2d 507, 509 (Ohio 1994). *Sloan* involved a mutual mistake about the existence of personal injury, and *Sloan* has been applied where a release was so broad as to encompass claims to which the releasor was ignorant. *See Task*, 1994 WL 43883, at *5. This case does not involve the release of an unknown or nonexistent injury. The parol evidence on which plaintiff relies shows, in fact, that plaintiff recognized the document as including a general release, but concluded, without seeking the advice of counsel or asking the GM representatives for clarification, that the release would not apply to this lawsuit because it did not specifically mention intentional tort claims or the pending lawsuit. The court in *Task* warned that if the parties to a release intend to exclude certain claims or matters, their intention should be made manifest. *Id*. at *4. Plaintiff emphasizes that, in discussing the buyout, neither he nor the GM representatives mentioned the recently filed lawsuit or his intentional tort claim; that GM did not contact his attorney in this case; that the lump-sum payment he received in the buyout was treated as taxable income; and that the parties continued to litigate this action notwithstanding the release. The release, however, was executed as a condition of the buyout and not as part of a settlement of this action. That being the case, neither the lack of specificity concerning this claim in the release, nor the failure to immediately seek dismissal of this case, support an inference that GM did not intend the general release to encompass the workplace intentional tort claim asserted in the recently filed lawsuit. *See Osborne v. McCalla*, No. 2006CA00253, 2007 WL 2193554 (Ohio Ct. App. Jul. 30, 2007) (applying *Sloan* to a claim of mutual mistake and finding no evidence that insurer defendant entered into the release by mutual mistake).

Having concluded that the plaintiff's intentional tort claim is barred by the release, we need not reach the district court's other independent reasons for granting GM's motion for summary judgment.

**AFFIRMED.**

-----------------------

## CONCURRENCE

-----------------------

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in the lead opinion. I write separately only to note that, although I agree with both the reasoning and the result of Judge McKeague's concurring opinion, I do not join in it because I do not believe we should reach the merits of the intentional tort claim.

---------------------

**CONCURRENCE**

---------------------

McKEAGUE, Circuit Judge, concurring.  I agree with the majority that the release bars Plaintiff's claim.  I write separately to note that, even in the absence of the release, Plaintiff's claim would fail.

An intentional tort is a narrow exception to Ohio's workers' compensation system. *Brookover v. Flexmag Indus., Inc.*, No. 00CA49, 2002 WL 1189156, at *11 (Ohio Ct. App. Apr. 29, 2002).  The exception is limited to egregious employer conduct.  *Sanek v. Duracote Co.*, 539 N.E.2d 1114, 1117 (Ohio 1989).  It is a difficult claim to establish.  *Taulbee v. Adience, Inc., BMI Div.*, 696 N.E.2d 625, 629 (Ohio Ct. App. 1997).

The Ohio Supreme Court articulated the requirements to prove intent for an intentional tort as follows:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108, 1109 (Ohio 1991).

Plaintiff does not meet the standard for the second element of the *Fyffe* test: "knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty."[1] *Id.* at 1109.  This element requires proof beyond "knowledge and appreciation of a risk."  *Id.* at 1112.  "Exposure to conditions or processes that are dangerous-even unusually so-is insufficient in itself to establish substantial certainty of injury."  *Cheriki v. Black River Indus., Inc.*, No. 07CA009230, 2008 WL 2229632, at *8 (Ohio Ct. App. June 2, 2008).

Though it is, by its nature, a fact-specific inquiry, an Ohio appellate court described some of the factors used in assessing this element: "knowledge of a high probability of harm, including prior accidents of a similar nature, inadequate training, and whether the employer deliberately removed or deliberately failed to install safety features."  *Tucker v. Huff*, No. 07-HA-7, 2008 WL 2587054, at *5 (Ohio Ct. App. June 30, 2008).  Another court recited these factors: "the employer's concealment or misrepresentations concerning the danger, and federal and/or state safety violations or noncompliance by the employer with industry safety standards."  *Marks v. Goodwill Indus. of Akron, Ohio, Inc.*, No. 20706, 2002 WL 462864, at *2 (Ohio Ct. App. Mar. 27, 2002).

--------------------------------

[1] The district court also held that Plaintiff failed to raise a genuine issue of material fact with regard to the knowledge of a dangerous condition element.  *Seals v. General Motors Corp.*, No. 1:06 CV 1592, 2007 WL 2579401, at *7 (N.D. Ohio Aug. 30, 2007).  Plaintiff presented several incident reports and an email created by GM supervisors in the normal course of their business activities that indicated GM knew the retaining plate had been missing.  These statements were admissible against GM as party admissions.  *See* Fed. R. Evid. 801(D)(2).  An admission is probative evidence of an employer's knowledge.  *See Crane v. Lakewood Hosp.*, 658 N.E.2d 1088, 1091-92 (Ohio Ct. App. 1995).  A jury could find based on this evidence that GM had prior knowledge of the missing plate, so summary judgment based on this element was inappropriate.

At most, only one of these factors support Plaintiff's claim. Plaintiff could plausibly argue that there was a high probability of harm. GM affidavits suggest that a broken or missing retaining plate would have been treated seriously. It is plausible to infer from these affidavits that GM knew there would be a high risk of injury if a retaining plate was not fixed. No other factor supports Plaintiff's claim. There are no reports of similar accidents, Plaintiff does not mention any relevant training, nor did GM deliberately remove or fail to install a safety feature. GM made no misrepresentations about safety, and neither party refers to any relevant state, federal, or industry safety standards.

Plaintiff argues that GM's failure to repair the retaining plate is analogous to removing or failing to install a safety feature. This argument misses the mark. Failing to "take corrective action" is an example of conduct that "may be characterized as gross negligence or wantonness . . . [but] should not be classified as an 'intentional tort.'" *Van Fossen v. Babcock & Wilcox Co.*, 522 N.E.2d 489, 504-505 (Ohio 1988).

The cases Plaintiff cites do not suggest anything other than that a *deliberate act* contributes to finding a substantial certainty. In *Brookover*, the court stated that "the trier of fact may consider evidence that an employer has deliberately removed or deliberately failed to install a safety guard." 2002 WL 1189156, at *18. It found that the employer had deliberately failed to install a safety guard. *Id.* In *Walton v. Springwood Products, Inc.*, the employer copied another piece of equipment, but failed to copy the safety guard. 663 N.E.2d 1365, 1368 (Ohio App. 1995). It did so despite the fact that the guard was required under OSHA standards. *Id.* The employer's failure was found to be deliberate and thus supported a finding that the employer knew there was a substantial certainty of harm.

Plaintiff has only presented evidence that GM did not repair the safety feature within a week of learning of the missing plate. There is no proof that the failure to repair was deliberate. At most, there is proof of GM's knowledge and appreciation of some risk involved if a retaining plate was missing. These do not establish substantial certainty. *See Cross v. Hydracrete Co., Inc.*, 728 N.E.2d 1104, 1108 (Ohio App. 1999). At most, delaying a week might have been negligent; it was not so egregious as to satisfy the *Fyffe* test.

Because Plaintiff did not raise an issue of material fact with regard to the substantial certainty element, the district court appropriately granted summary judgment for GM regardless of the effect of the release.