**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0947n.06

Case No. 11-5272

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 27, 2012**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| 500 ASSOCIATES, INC., a Kentucky Corporation, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| VERMONT AMERICAN CORPORATION, a Delaware Corporation, | ) ) ) | |
| Defendant-Appellee. | ) | |

BEFORE:  BATCHELDER, Chief Judge; MOORE and KEITH, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.**  To revise a quotation, we live in a world full of hexavalent chromium waste.[1]  Nowhere is this more true than in the soil that supports our manufacturing industry; the chemicals that make heavy industry possible also, in many cases, follow the pull of gravity to where they are least wanted and least noticed, and abide as a silent menace under our feet.  Yet this is no secret.  Industrial pollution exists despite the preventative and remedial efforts of manufacturers, who are subject to pervasive environmental regulation by state and federal agencies.  500 Associates, the plaintiff-appellant, was well aware of the character of the land it bought in 1987 from Vermont American, the defendant-appellee; it was aware that Vermont American had used various chemicals to manufacture circular-saw blades and other tools on the

---

[1] *See New York v. United States*, 505 U.S. 144, 149 (1992) ("We live in a world full of low level radioactive waste.").

property, and even that the property had been exposed to pollution through accident and the industrial process. But 500 Associates insists that Vermont American committed fraud by not disclosing at the time of the sale one specific instance of pollution and that we should permit 500 Associates to amend its complaint to include a state-law fraud claim based on this non-disclosure. The district court denied 500 Associates's motion to amend, holding that amendment would be futile given that Kentucky statutes of limitations bar the fraud claim. We AFFIRM, for the same reason.

## I.

For almost forty years, Vermont American owned property in Louisville, Kentucky where it operated a manufacturing facility that produced circular-saw blades and other tools—500 East Main Street. As part of the manufacturing process, the facility generated hazardous chemical waste, including hexalavent chromium and volatile organic compounds. In 1986, Vermont American shuttered operations at this location and searched for a buyer for the property, which it found in 600 Associates—a predecessor to 500 Associates. The purchase agreement addressed prior instances of industrial pollution on the property and included a provision allowing 600 Associates to abandon the contract if it was not satisfied with the environmental condition of the property; Vermont American made no warranties about the environmental quality of the property.

Prior to completing the purchase, 600 Associates commissioned an environmental consultant to inspect the property. After conducting an on-site inspection, reviewing Vermont American's records, and speaking with Tim Daniel, Vermont American's health and safety inspector, the consultant concluded that Vermont American had adequately decontaminated the areas of the property subject to industrial pollution. Daniel told the consultant that there had been a 100 gallon

2

spill of nickel on the property, but denied knowledge of other releases of hazardous material. The consultant found traces of chromium contamination and other hazardous material, but the consultant did not take soil samples. In 1987, 600 Associates transferred its purchase rights to 500 Associates, and on August 31, 1987, 500 Associates completed the purchase of the property.

In 1990, in preparation for resale, 500 Associates demolished part of a building near the area formerly used by Vermont American for electroplating and waste treatment operations, exposing soil that had formerly been covered. A potential buyer, Doe Anderson Advertising, conducted its own investigation of the property and discovered various inorganic constituents, elevated levels of metals, volatile organic compounds in the soil, and inorganic constituents and chlorinated solvents in the groundwater—contamination that had not previously been discovered. At the time, Vermont American denied that it was responsible for this pollution. 500 Associates then commissioned another investigation of the property in 1991, which discovered volatile organic compounds from forty-four samples across the property, and concluded that the source of the contamination was probably another property. Doe Anderson withdrew from the purchase agreement as a result of the findings.

A few years later, in 1994, the Kentucky Natural Resources and Environmental Protection Cabinet ("KNRE") launched an investigation of the contamination on the property and requested more information; at nearly the same time, 500 Associates filed its first lawsuit against Vermont American—a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") action that was dismissed without prejudice in 1995. In 1996, 500 Associates filed the present suit against Vermont American alleging, in addition to a CERCLA claim, a number of

state law claims, including mutual mistake, negligence, negligent misrepresentation, nuisance, and strict liability for abnormally dangerous activities. 500 Associates alleged that Vermont American did not fully disclose the environmental condition of the property and that 500 Associates failed to discover its true condition despite its investigations. 500 Associates specifically alleged that "upon information and belief, there were a number of spills and other releases of chemicals into the environment at the facility during the time that VA owned and operated it." Vermont American moved to dismiss the complaint and for summary judgment in September 1998; the district court granted summary judgment to Vermont American on the negligence, negligent misrepresentation, nuisance, and strict liability for abnormally dangerous activities counts because they were barred by Kentucky's five-year statute of limitations. Only the CERCLA and mutual mistake claims survived summary judgment.

That same year, the KNRE filed an administrative complaint against both Vermont American and 500 Associates based on the contamination on the property. In 1999, in connection with the KNRE investigation, Daniel stated in a deposition that Vermont American had been aware that a junction box on the property had leaked untreated wastewater in the early 1980s; the wastewater contained hexavalent chromium and other hazardous materials, but Daniel insisted that the amount of hexavalent chromium leaked through the junction box was below reportable levels. 500 Associates had not been informed of the junction box leak by Vermont American. In 2000, Daniels testified before the KNRE and reiterated his earlier statement about the junction box—this time admitting that he could not quantify the amount of wastewater that had leaked, although he insisted again that it was below reportable levels. In 2002, the Secretary of the Cabinet found that both

Vermont American and 500 Associates had violated Kentucky law and imposed civil penalties on both entities.

In March 2003, Vermont American moved for summary judgment on the remaining claims. Soon after, in April, 500 Associates moved for leave to file an amended complaint and add a state-law fraud claim. In December 2003, the district court granted Vermont American's motion for summary judgment and denied 500 Associates's request to file an amended complaint; the district court then denied 500 Associates's motion to reconsider. The case became final on February 7, 2011, so 500 Associates is only now appealing the district court's denial of its motion for leave to amend the complaint. 500 Associates does not appeal the district court's grant of summary judgment to Vermont American on the CERCLA and mutual mistake claims. Even though the CERCLA claim was the basis of the district court's jurisdiction and 500 Associates is not appealing summary judgment of that claim, we have jurisdiction on appeal. *See* 28 U.S.C. § 1291.

## II.

We normally review the district court's denial of leave to amend the complaint for abuse of discretion. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2009). But we review de novo a district court's denial of leave to amend when the district court bases its denial on futility of amendment, which is simply defined as an amendment to the complaint that would not survive a Rule 12(b) motion to dismiss. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *see also Wade*, 259 F.3d at 459. Because the district court in this case refused

to allow amendment on the ground that Kentucky statutes of limitations would foreclose the fraud claim, we review the district court's determination de novo.[2]

Pursuant to Rule 15(a), a district court should freely give leave to amend the complaint "when justice so requires." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (internal quotation marks omitted). "Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Id.* (citing *Wade*, 259 F.3d at 458–59). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459.

Fraud is a state-law claim, so we apply Kentucky law. *See Elam v. Menzies*, 594 F.3d 463, 466 (6th Cir. 2010). Because we are reviewing only the district court's holding that Kentucky statutes of limitations make amendment futile, we do not consider whether Vermont American's non-disclosure of the junction-box leak constitutes fraud.

**III.**

In its rather brief opinion, the district court held that two of Kentucky's statutes of limitations barred 500 Associates's fraud claim. KRS § 413.120(12) states that:

---

[2]Vermont American argues that the district court did not deny leave to amend because it would be futile, but instead because it "found it inappropriate in the context of this litigation" to allow amendment, and that accordingly we should apply abuse of discretion review. We disagree. The district court specifically noted that the amended claim would be barred by Kentucky statutes of limitations—just because it failed to use the term "futile" does not change the inherent character of the district court's holding.

The following actions shall be commenced within five (5) years after the cause of action accrued:

. . . .

(12)  An action for relief or damages on the ground of fraud or mistake.

KRS § 413.130(3), however, provides an exception to § 413.120(12) as well as an absolute limitation on a fraud claim; it states that:

In an action for relief or damages for fraud or mistake, referred to in subsection (12) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.

The clock on the § 413.120(12) limitation begins when the victimized party knows or should have known about the fraud and runs for five years, *see Wilson v. Paine*, S.W.2d 284, 286 (Ky. 2009), while the clock on § 413.130(3) begins when the fraud is perpetrated or the contract is made and runs for ten years.  Both statutes bar 500 Associates's fraud claim.

First, the amendment is barred by § 413.120(12) because 500 Associates's fraud claim accrued by 1996 at the latest.  500 Associates's 1996 complaint specifically alleged that "upon information and belief, there were a number of spills and other releases of chemicals into the environment at the facility during the time that VA owned and operated it."  The complaint further stated that "[a]lthough [Vermont American] did disclose some information to the plaintiff concerning environmental matters before the sale, VA did not disclose sufficient information concerning [the chemicals found after the sale]," and that "[b]y selectively disclosing information about the environmental condition of the Property, [Vermont American] created a false impression about the condition of the Property."  Under Kentucky's discovery rule, "what the plaintiff must

7

'discover' is not that he has a cause of action, but rather only that he has been injured at the hands of an identifiable party." *Dodd v. Dyke Indus., Inc.*, 518 F. Supp. 2d 970 (W.D. Ky. 2007) (citing *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky.1982)); *see Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010) ("[U]nder the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers[,] or in the exercise of reasonable diligence should have discovered[,] not only that he has been injured, but also that this injury may have been caused by the defendant's conduct. But the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence." (citations and internal quotation marks omitted)). And "[a] person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999). In 1996, 500 Associates knew or had reason to know that there was additional pollution on the property, and that Vermont American may have been responsible, so the five year statute of limitation expired no later than 2001, well before 500 Associates tried to amend the complaint in 2003.

It is true, as 500 Associates argues, that if "there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries," the statute of limitations is tolled "to allow an injured plaintiff to discover the identity of the wrongdoer." *McLain*, 16 S.W.3d at 326. Yet in 1996, when it filed its complaint, 500 Associates already knew Vermont American's identity, knew that it had been injured, and claimed the Vermont American was responsible in part because it concealed information about the pollution from 500 Associates. Considering that 500 Associates had a duty to investigate and discover the identity of the tortfeasor

when it was aware of its injury—which was not later than 1991, when Doe Advertising discovered the additional pollution and withdrew from the purchase agreement—it is not reasonable for 500 Associates to claim ignorance due to Vermont American's misrepresentation. Fraudulent concealment offers no safe harbor for 500 Associates's fraud claim.

500 Associates also argues that the five-year statute-of-limitation did not accrue until 1999 at the earliest—when Daniel admitted the junction-box leak—because, in its view, it had to have notice of scienter before the limitation period begins to run. Not so. Kentucky law does not hold that a fraud claim is tolled until the injured party has notice of scienter; in fact, the third element of fraud under Kentucky law requires a showing of scienter *or* recklessness. *See, e.g.*, *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Grant v. Wrona*, 662 S.W.2d 227, 229 (Ky. Ct. App. 1983)); *Kinslow v. Combs's Adm'r*, 155 S.W.2d 233, 235 (Ky. 1941). Whatever the pleading requirements for scienter, specific admission of intent to commit fraud is certainly not necessary to plead recklessness. *See Johnson v. Cormney*, 596 S.W.2d 23, 27 (Ky. Ct. App. 1979)) ("Fraud may be established by evidence which is wholly circumstantial."). And, as we noted, 500 Associates's complaint itself claims that Vermont American hid evidence of pollution from 500 Associates when making the sale of the property. 500 Associates's reliance on the date they received proof of scienter is thus misplaced.[3]

---

[3] 500 Associates relies mostly on an Alaska Supreme Court case for its argument that notice of scienter is required for a fraud claim to accrue. *See City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173 (Ak. 1998). We note only that *City of Fairbanks* was applying Alaskan law and interpreting the Alaskan constitution; that *City of Fairbanks* did not interpret any Kentucky case or statute or make universal statements about the law of fraud; and that no Kentucky court has, to our knowledge, cited *City of Fairbanks* or relied upon its reasoning. We must interpret Kentucky law to decide Kentucky causes of action, and we have no reason to think that the Kentucky Supreme Court would find *City of Fairbanks* persuasive.

Second, even if 500 Associates's fraud claim was not barred by the five-year statute of limitation, it was foreclosed by Kentucky's absolute ten-year limitation on fraud claims. *See* K.R.S. § 413.130(3) ("[A]n action for relief or damages for fraud or mistake . . . shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud."). Vermont American and 500 Associates signed the sale agreement in 1987, *sixteen* years prior to 500 Associates's first attempt to claim fraud.

500 Associates argues that the absolute ten-year limit would violate the provision of Kentucky's constitution preserving the openness of courts—that § 413.130(3) is an unconstitutional statute of repose. *See* Ky. Const. § 14. But Kentucky courts have never suggested that the fraud statute is unconstitutional. *See Dodd*, 518 F. Supp. 2d at 973; *Hogan v. Goodrich Corp.*, No. 05-159, 2006 U.S. Dist. LEXIS 2004, *13 (W.D. Ky. Jan. 17, 2006). 500 Associates relies on *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973), for this holding, but the Kentucky Supreme Court had to strongly distinguish the statute of repose for wrongful death suits before finding it unconstitutional:

> We do not consider decisions construing our limitations-of-actions statutes governing suits for fraud as persuasive in resolving the issue posed in this case. . . . [T]he perpetration of fraud immediately invades a plaintiff's protected legal interests and, in that sense, immediately produces "injury," while in this case the protectable legal interests of the plaintiffs were not invaded until long after the conduct occurred.

*Id.* at 225. Indeed, in the language quoted above, the Kentucky Supreme obliquely suggested that the fraud statute is *not* an unlawful statute of repose. Although there might be a circumstance in which § 413.130(3) could bar a fraud claim before the victimized party is even aware that he is injured, a classic repose scenario, those are not the facts here; 500 Associates was well aware of its

injury long before it brought the lawsuit, and was, to put it mildly, deeply suspicious that Vermont American was the cause of its injury.

Nor is K.R.S. § 413.190(2) applicable in this case; it is a codification of equitable estoppel principles and holds that the statutes of limitations toll whenever a defendant "obstructs the prosecution" of a cause of action "by absconding or concealing himself or by any other indirect means." *See Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914–15 (Ky. 1992). Obstruction includes "where a defendant conceals a plaintiff's cause of action so that it could not be discovered by the exercise of ordinary diligence on the plaintiff's part." *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 290 (Ky. Ct. App. 1998). "Once the obstruction is removed, a plaintiff has a duty to exercise reasonable diligence in pursuing his or her claims." *Anderson v. Board of Educ. of Fayette County*, 616 F. Supp. 2d 662, 670 (E.D. Ky. 2009) (citing *Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 630–31 (Ky. 1964)); *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 439 (W.D. Ky. 1994) (noting that the plaintiff retains the "duty to exercise reasonable care and diligence to discover whether he had a viable legal claim," and that information which should give notice of the fraud claim amounts to "actual knowledge of it." (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975))).

Here, 500 Associates was aware at the time that it filed the lawsuit that Vermont American might have omitted disclosing additional pollution on its property and even alleged that Vermont American did so. Under these circumstances, § 413.190(2) certainly does not operate to toll the limitations periods past 1996, which means that the five-year statute of limitations bars the fraud

claim, and arguably does not toll the limitations periods past 1991, which means that the ten-year limitations period also bars the claim.[4] 500 Associates's common law equitable estoppel argument is unavailing for substantially the same reasons. *See Fluke*, 306 S.W.3d at 60 (noting that equitable estoppel requires a showing of "(1) lack of knowledge or means of knowledge of the truth; (2) reliance, in good faith, based on something [defendant] did or did not do or state; and (3) resulting action or inaction on the [plaintiffs'] part that somehow changes their position or status for the worse"). 500 Associates clearly did not "lack . . . knowledge or means of knowledge of the truth," given that they owned the property in question and had actual knowledge of environmental contamination that was not disclosed by Vermont American.

## IV.

The Kentucky Supreme Court has cautioned that "provisions of statutes of limitations should not be lightly evaded." *Munday*, 831 S.W.2d at 914 (citation omitted). We heed this admonition and **AFFIRM** the judgment of the district court.

---

[4]We also note that 500 Associates may not have exercised ordinary diligence in examining the property for defects before purchasing it, which would normally bar application of § 413.190(2), as well as any other fraud claim. *See Walter Bledsoe & Co. v. Elkhorn Land Co.*, 219 F.2d 556, 559 (6th Cir. 1955); *Roman Catholic*, 966 S.W.2d at 290. Given the objective evidence that 500 Associates was aware of its injury and that Vermont American may have been responsible, we do not reach the ordinary diligence issue, a factual dispute best left to resolution in another forum.